**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ZACCHAEUS CRAWFORD,

                Petitioner,

vs.                             Case No.:    3:13-cv-719-J-34MCR
                                                3:11-cr-213-J-34MCR

UNITED STATES OF AMERICA,

                Respondent.
_____/

## ORDER

This case is before the Court on Petitioner Zacchaeus Crawford's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1, Motion to Vacate).[1]  The United States filed a Motion to Dismiss on May 16, 2014, based on a collateral review waiver.  (Doc. 7, Motion to Dismiss).  Crawford filed a Reply on July 24, 2014.  (Doc. 10, Reply).  The Motion to Vacate, which was timely filed, is ripe for the Court's review.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action.

_____

[1]  Citations to Crawford's criminal case file, United States of America v. Zacchaeus Crawford, 3:11-cr-213-J-34MCR, are denoted as "Crim. Doc. ___."  Citations to Crawford's civil § 2255 case file, 3:13-cv-719-J-34MCR, are denoted as "Doc. ___."

[2]  Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]  For the reasons set forth below, Crawford's Motion to Vacate is due to be denied.

## I.    Background

On August 18, 2011, a grand jury sitting in the Middle District of Florida indicted Crawford on one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) (Count One), one count of transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and 2252(b)(1) (Count Two), and two counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) (Counts Three and Four).  (Crim. Doc. 1, Indictment).  Crawford pled guilty to Count One pursuant to a written plea agreement on September 14, 2011.  (See Crim.

---

[3]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

Doc. 19, Plea Agreement; Crim. Doc. 32, Plea Transcript ("Plea Tr.")).  During the plea colloquy, the Court advised Crawford of the charge to which he was pleading guilty, its elements, and the fact that it carried a mandatory minimum sentence of five years' imprisonment and a maximum term of 20 years in prison.  Plea Tr. at 10-11; see also Plea Agreement at 1, 2-3.  The Court advised Crawford of his due process rights, including the right to trial and the right to confront witnesses, and that he would waive those rights by pleading guilty.  Plea Tr. at 6-7.  The Court also advised Crawford that by pleading guilty, he would waive the "right to challenge the way the United States may have obtained any evidence, statement, or confession."  Id. at 7.  Crawford stated that he understood those rights, and that he knowingly and voluntarily waived them.  Id. at 7-8. Before accepting Crawford's plea, the Court explained that his Plea Agreement also included a waiver of the right to directly or collaterally appeal his sentence.  Id. at 17-18; see also Plea Agreement at 9-10.  Crawford stated that he understood the waiver, and that he knowingly and voluntarily accepted it.  Plea Tr. at 18.

Following the Court's discussion of Crawford's rights and those which he waived by entering a guilty plea, the government recited the factual basis for the guilty plea, and Crawford acknowledged it to be true.  Plea Tr. at 19-25.  Specifically, Crawford admitted to downloading and viewing images of child pornography from the internet, which depicted both pre- and post-pubescent children.  Plea Agreement at 14-18; Plea Tr. at 19-24.  Crawford admitted that he knowingly downloaded the images, and that he knew the images depicted child pornography.  Plea Agreement at 13, 18; Plea Tr. at 24. Crawford also admitted to each element of the offense to which he pled guilty, and stated

that he had decided to plead guilty knowingly and freely. Plea Tr. at 25-26. The Court thus accepted Crawford's plea and adjudicated him guilty.

Crawford appeared before the Court for sentencing on June 25, 2012. (See Crim. Doc. 29, Sentencing Transcript ("Sentencing Tr.")). In accordance with the Presentence Investigation Report ("PSR"), the Court determined that Crawford's Total Offense Level under the United States Sentencing Guidelines ("Guidelines") was 34, and that his Criminal History Category was I. Sentencing Tr. at 6. Consequently, Crawford's advisory Guidelines sentencing range was a term of imprisonment of 151 to 188 months. See id. The United States recommended a sentence at the low end of the Guidelines range because, from the beginning of the investigation, Crawford had cooperated with law enforcement and provided truthful information. See id. at 7-11.

Crawford presented three family members as witnesses. See id. at 15-24. The testimony of the family members reflected that Crawford had been non-violent throughout his life, that he had a healthy relationship with his niece, that his father had been physically and mentally abusive toward him and his siblings, and that Crawford had been bullied and ostracized since childhood on account of being homosexual. In argument, defense counsel pointed out that Crawford had attempted to assist the government in tracking down an individual from whom he received child pornography, although such efforts had not "yielded fruit" as of the date of the sentencing hearing. Id. at 29-31. Additionally, counsel informed the Court that Crawford had voluntarily undergone faith-based treatment with a Dr. Jason Hosch. Id. at 31. Dr. Hosch, however, refused to release treatment records to the probation office. See id. at 31-32. Counsel had hoped to have Dr. Hosch testify at the sentencing hearing, but explained that he opted not to do so

4

because Dr. Hosch had provided counsel with a letter concerning Crawford's therapy that "fell far short" of what counsel had expected.  See id. at 31-32.

Relying on the family members' testimony and Crawford's background, counsel advocated for a mandatory minimum sentence, explaining, among other things, that Crawford had shown no tendency to act on any sexual fantasies; had experienced a physically and psychologically abusive upbringing; had expressed remorse and accepted responsibility for his actions; and had cooperated with the government.  See id. at 25-46. Without denying responsibility for the offense, counsel also attempted to mitigate the sentencing impact of certain graphic, violent, and sexually explicit short stories that law enforcement found among Crawford's computer files.  Defense counsel suggested that because the peer-to-peer file-sharing program employed by Crawford to receive child pornography, GigaTribe, allowed for passive downloading, Crawford had not necessarily approved of the most graphic items downloaded to his computer, including the short stories.  Id. at 33, 35-38.  The Court expressed some skepticism at this argument, noting that Crawford had deleted some downloaded files but not others, reflecting that he reviewed the files to determine which ones to keep and which not to keep.  See id. at 33-34.

Following counsel's presentation, Crawford provided a statement in allocution.  Id. at 46-52. Crawford accepted responsibility for the crime and expressed remorse.  He conveyed a desire to turn his life around, to assist in stopping behavior that exploits children, and to make a difference in the lives of others by sharing his personal experiences.  Crawford also expressed gratitude for the intervention of federal law enforcement.

Ultimately, in arriving at an appropriate sentence, the Court varied below Crawford's advisory Guidelines range and sentenced Crawford to a term of 125 months in prison, followed by a 15-year term of supervised release.  Id. at 54.  The Court stated that it "appreciate[d] counsel's effort to provide the Court with a full picture of who Mr. Crawford is, and counsel effectively responded to some of the concerns raised by the Court, and that is what caused me to vary somewhat downward."  Id. at 57.  The Court declined Crawford's suggestion that he should receive the mandatory minimum sentence, explaining that child pornography is a serious offense that affects real victims, and that Crawford had maintained a very large, carefully organized collection of illicit material.  Id. at 57.  On the other hand, the Court observed that Crawford had experienced an abusive childhood due to his sexual orientation, and while that did not excuse his conduct, it was relevant to granting a downward variance.  Id. at 57-59.  The Court explained that it believed the sentence imposed was sufficient, but not greater than necessary to satisfy the purposes of sentencing, id. at 60, i.e., to "effect just punishment, to protect the public, and to accomplish both specific and general deterrence," id. at 58.

Crawford did not appeal his conviction or sentence to the Eleventh Circuit Court of Appeals.  Therefore, Crawford's conviction and sentence became final on July 10, 2012, fourteen days after judgment was entered.  (See Crim. Doc. 28, Judgment) (entered June 26, 2012).  Crawford timely filed the instant § 2255 motion on June 16, 2013.

## II.    Collateral Review Waiver

A petitioner's right to directly or collaterally challenge his sentence may be barred if he effectively waived that right pursuant to a plea agreement.  Williams v. United States, 396 F.3d 1340, 1341-42 (11th Cir. 2005), cert. denied, 546 U.S. 902 (2005) (holding that

petitioner's valid sentence-appeal waiver made pursuant to a plea agreement precluded him from collaterally attacking his sentence later on a claim of ineffective assistance of counsel during sentencing); Thompson v. United States, 353 F. App'x 234, 235 (11th Cir. 2009) (per curiam) ("When a valid sentence-appeal waiver containing express language waiving the right to attack a sentence collaterally is entered into knowingly and voluntarily, it will be enforceable and serve to prevent a movant from collaterally attacking a sentence on the basis of ineffective assistance of counsel.").  To be enforceable, such that a sentence-appeal waiver will bar a § 2255 challenge, the waiver must be made knowingly and voluntarily.  See Williams, 396 F.3d at 1341 (citing United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993)).  To establish that a waiver was made knowingly and voluntarily, the Government must demonstrate either that:  (1) the district court specifically questioned the petitioner concerning the sentence-appeal waiver during the plea colloquy, or (2) the record clearly shows that the petitioner otherwise understood the waiver's full significance.  Id.

As referenced earlier, Crawford waived the right to directly appeal or collaterally challenge his sentence pursuant to his Plea Agreement.  The record of the plea colloquy reflects that Crawford was specifically advised of the waiver, that he understood it, and that he knowingly and voluntarily accepted it.  See Plea Tr. at 17-18; Plea Agreement at 9-10.  Thus, the waiver is valid, and that waiver may be enforced against ineffective assistance of counsel claims.  Williams, 396 F.3d at 1341-42.  Moreover, Crawford raises four claims alleging that counsel rendered ineffective assistance at sentencing.  See Motion to Vacate at 14-20.  As these claims fall squarely within the scope of Crawford's

collateral review waiver, the Court could dismiss the claims as barred.  However, the United States has not relied solely on the waiver in responding to the petition.

The Court observes that in October 2014, the Department of Justice ("DOJ") announced a policy of not enforcing sentence-appeal waivers against ineffective assistance of counsel claims.[4]   Additionally, the Court observes that the DOJ has enforced the new policy on appeal, resulting in cases being remanded to district courts for an adjudication on the merits where the district courts initially denied § 2255 relief based on such a waiver.[5]   Accordingly, in the interest of judicial economy, the Court will not rely on the collateral review waiver when addressing ineffective assistance claims, but will proceed to address the merits.

## III.   Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.  United States v. Addonizio, 442 U.S. 178, 184-86 (1979).

---

[4]      http://www.justice.gov/file/70111/download.

[5]      See Marshall v. United States, 592 F. App'x 919 (11th Cir. 2015); Murdock v. United States, 589 F. App'x 526 (11th Cir. 2015); Jones v. United States, 582 F. App'x 845 (11th Cir. 2014).  To be clear, however, such a waiver is not illegal, and it remains enforceable as a matter of law where the government insists on continuing to enforce it.  Demello v. United States, 623 F. App'x 969, 972-73 (11th Cir. 2015).

A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994).  In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance.  Weeks, 26 F.3d at 1036.  The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance."  Id.  To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  Id. at 1036-37 (citing Strickland, 466 U.S. at 694).  In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence.  Strickland, 466 U.S. at 695.  However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's]

ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A.   Claim 1.1: Whether counsel rendered ineffective assistance by not moving to suppress statements Crawford made to law enforcement, and whether failure to do so prejudiced Crawford at the sentencing hearing

In Claim 1.1, Crawford argues that counsel was ineffective for not moving to suppress statements that were allegedly elicited as the result of an unlawful custodial interrogation.  Motion to Vacate at 14-15.  Crawford claims that he suffered prejudice because several of those statements were used against him at sentencing.  Other than Crawford's statement to police that he had viewed child pornography since the age of 12, however, Crawford does not identify which statements were allegedly prejudicial, how they were prejudicial, or what ground counsel would have had to suppress the statements.  Nevertheless, Crawford states that he "believes the Court would have departed further below his guidelines had those statements been suppressed."  Id. at 15.

In order to show that counsel rendered ineffective assistance for failing to file a motion to suppress, a petitioner must show (1) that he had meritorious grounds for moving to suppress evidence, (2) that counsel's failure to move for suppression was objectively unreasonable, and (3) that absent the excludable evidence, there is a reasonable probability the outcome of the proceedings would have been different.  Kimmelman v. Morrison, 477 U.S. 365, 375, 382 (1986).[6]  As with all ineffective assistance claims, the "reasonableness of counsel's performance is to be evaluated from counsel's perspective

---

[6]      Kimmelman concerned an attorney's failure to file a Fourth Amendment motion to suppress evidence.  However, the Court knows of no reason why Kimmelman's framework would not apply to a claim that an attorney was ineffective for not moving to suppress statements allegedly taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966), or the Fifth Amendment.

at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." Id. at 381 (citation omitted). Importantly, the "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id.

Here, Crawford does not satisfy any of Kimmelman's three steps. First, Crawford does not demonstrate that there was any meritorious ground for suppressing any of his statements to law enforcement. Indeed, the record affirmatively refutes such a contention. In recounting the factual basis during the plea colloquy, the government stated that when federal agents arrived at Crawford's home to execute a search warrant, "Crawford agreed to an interview at the time of the search." Plea Tr. at 20-21. The factual basis further stated that "[t]he agent informed Crawford that he was not under arrest and that he was free to leave," and that after the interviewing agents advised Crawford of their identities and the nature of the interview, Crawford provided them with information. Id. at 21. Crawford affirmed that the factual basis was true, and that he had no disagreement with the government's account of events. Id. at 25. Thus, Crawford admitted that he agreed to speak with the officers, that the officers advised him he was not under arrest and that he was free to leave, and that he volunteered information to the officers. Additionally, Crawford's counsel emphasized at the sentencing hearing that Crawford cooperated with police "voluntarily," "freely," and without having been "threatened or promised" anything. Sentencing Tr. at 30.

The record reflects that Crawford was not in custody when he spoke to the officers, and as such, he could not have suppressed the statements as a violation of his <u>Miranda</u> rights.  <u>United States v. Brown</u>, 441 F.3d 1330, 1347 (11th Cir. 2006) (defendant was not "in custody," for purposes of <u>Miranda</u>, where officers advised him that he was not under arrest, and that he was free to leave).  The record further reflects that, because Crawford admitted he agreed to an interview with the officers, and because he spoke with them "freely" and "voluntarily," he cannot show that his statements were involuntarily taken from him in violation of Due Process.  <u>See</u> <u>Leon v. Wainwright</u>, 734 F.2d 770, 772 (11th Cir. 1984) (citing <u>Martinez v. Estelle</u>, 612 F.2d 173, 177 (5th Cir. 1980)) (the standard for determining whether a confession is voluntary is whether it was the product of a "free and rational" choice).  Accordingly, the record prevents Crawford from satisfying the first <u>Kimmelman</u> prong, because there was no basis for a meritorious motion to suppress.

Crawford also fails to satisfy the second <u>Kimmelman</u> prong, deficient performance, because the record reflects that Crawford was not interested in pursuing suppression of any evidence or statements.  The record shows that, from the moment he was indicted, Crawford intended to accept responsibility and plead guilty.  Indeed, throughout the sentencing hearing, Crawford and his counsel both emphasized to the Court that Crawford deserved lenience because he had cooperated with law enforcement, and that Crawford had always intended to accept responsibility for the crime.  Sentencing Tr. at 30-31, 44-45, 46-52.  At one point, counsel stated:

> He's never once – even as we've discussed defenses, whether or not to enter a plea, all of those conversations we had, never once ran from his responsibility here, not one time; not to me, not to anyone, not even to the people who had busted his door down, came in guns drawn in his face and said, "Tell us this."  And certainly that's procedure.  I'm not casting aspersions on federal authorities here, but that's certainly a scary moment.

12

And as I've mentioned to the Court, that was his moment of freedom, in his mind.

Id. at 44.  During allocution, Crawford even stated that he was thankful for the intervention of law enforcement.  Id. at 52.  Additionally, Crawford acknowledged when he pled guilty that he waived the right to challenge on appeal the manner in which the government obtained any evidence, statement, or confession.  Plea Tr. at 7.

These statements indicate that Crawford never desired to pursue a motion to suppress, and they are inconsistent with the notion that counsel had a constitutional obligation to do so.  As previously noted, the reasonableness of counsel's actions may be "determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691.  The fact that Crawford cooperated with law enforcement and intended to accept responsibility from the beginning, as recounted at the sentencing hearing, illustrates that counsel had no reason to file a motion to suppress.  Crawford's knowing and voluntary guilty plea; his waiver of the right to challenge the manner in which the government obtained any evidence, statement, or confession; and Crawford's own expression of gratitude for law enforcement's intervention further reflect that Crawford never wished to suppress any statements.  Crawford gave every indication that he wanted to admit to the crime, not contest the admissibility of his statements.  Because Crawford's statements and actions reflected no interest in filing a motion to suppress or in raising any other defenses, the Court concludes that counsel did not perform deficiently by not doing so.

Third, Crawford has not established prejudice.  Crawford offers little detail as to which statements should have been excluded from consideration by the Court at the sentencing hearing, nor does he explain why the Court would have varied even further

below his Guidelines range had such statements been suppressed.  The only statement Crawford identifies with any specificity is the statement that he had viewed child pornography since the age of 12.  See Motion to Vacate at 15.  However, rather than hurting Crawford, this fact tended to help him because it was consistent with Crawford's mitigation theory that viewing child pornography was rooted in an abusive childhood.  Otherwise, Crawford's pleadings regarding how he suffered prejudice are vague, unspecific, and largely conclusory.  Vague, speculative, conclusory, or unsupported allegations are insufficient to grant relief on an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).  Indeed, the Court affirms that Crawford received the appropriate sentence based on the facts of the crime.  Nothing in the record suggests the Court would have been inclined to sentence Crawford to anything less, even excluding any self-incriminating statements he might have made to law enforcement.  Because Crawford suffered from neither deficient performance of counsel nor prejudice, relief on Claim 1.1 is due to be denied.

**B.      Claim 1.2:  Whether counsel gave ineffective assistance at sentencing by not hiring a computer forensics expert, or by not familiarizing himself with the specific peer-to-peer file-sharing program Crawford used**

In Claim 1.2, Crawford alleges that counsel was ineffective for not hiring a computer forensics expert to analyze his computer, and for not familiarizing himself with GigaTribe, the peer-to-peer file-sharing program through which Crawford received child pornography.  Motion to Vacate at 15-17.  Crawford argues that certain isolated statements by counsel during the sentencing hearing show that counsel lacked technical familiarity with peer-to-peer file sharing programs.  See id. at 16; see also Sentencing Tr. at 35.  Crawford contends that counsel's lack of investigation left him unprepared to rebut

some of the government's allegations at the sentencing hearing.  Crawford identifies only two of the government's objectionable allegations with any specificity: (1) the prosecutor's statement that "[t]he collection that Mr. Crawford had was arranged in folders that were user created, that is[,] created by Mr. Crawford…"  Sentencing Tr. at 8, and (2) a suggestion allegedly made in the Presentence Investigation Report (PSR) that Crawford preapproved each file downloaded to his computer.  Motion to Vacate at 16.  Otherwise, Crawford only alleges generally that the PSR "made inferences… that were not derived from any fact based analysis," and that the government's sentencing arguments were based on "conclusory allegations" and "unsubstantiated assertions."  Id. at 17.  However, Crawford neither identifies what these other "conclusory allegations" and "unsubstantiated assertions" were, nor does he relate how further forensic investigation would have rebutted them.

This claim lacks merit, first because the record refutes the allegation that counsel's investigation was constitutionally deficient.  Preliminarily, the Court acknowledges a strong presumption exists that counsel's performance might be considered sound trial strategy, and strategic choices made after less than complete investigation are reasonable to the extent that reasonable professional judgments support the limitations on investigation.  Strickland, 466 U.S. at 689–91.  "[N]o absolute duty exists to investigate particular facts or a certain line of defense."  Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000).

Here, reasonable professional judgment supported counsel's decision not to hire a computer forensics examiner for the sentencing hearing, because Crawford had already admitted, by virtue of his plea colloquy, to the critical facts that influenced his Guidelines

sentencing range and ultimate sentence.  By pleading guilty, Crawford had admitted to the basic fact that he received child pornography, and that he downloaded it onto his computer.  Crawford's PSR also recommended several Guidelines enhancements for certain offense characteristics.  See PSR at 10-11, ¶¶ 37-42.  Crawford admitted to each of those offense characteristics as well when he admitted the truth of the factual basis at the plea colloquy.  Compare Plea Tr. at 19-26 with PSR at 10-11, ¶¶ 37-42.

For example, the PSR identified a two level enhancement for possessing images involving prepubescent minors or minors under the age of 12, pursuant to U.S.S.G. § 2G2.2(b)(2).  At the plea colloquy, Crawford admitted to receiving images involving prepubescent minors.  Plea Tr. at 23.

The PSR recommended a two level enhancement for the distribution of child pornography through a file-sharing network, pursuant to U.S.S.G. § 2G2.2(b)(3)(A)-(E). At the plea colloquy, Crawford admitted that he knew his child pornography files were being shared with others through the peer-to-peer file sharing program installed on his computer.  See Plea Tr. at 20, 22.

The PSR recommended a four level enhancement for material portraying sadistic or masochistic conduct, pursuant to U.S.S.G. § 2G2.2(b)(4).  At the plea colloquy, Crawford admitted to receiving material depicting an adult male anally penetrating a prepubescent boy.  Plea Tr. at 23.  As a matter of law, such images presumptively depict "sadistic and masochistic conduct."  United States v. Hall, 312 F.3d 1250, 1260-63 (11th Cir. 2002).

The PSR recommended a two level enhancement for using a computer for the possession, transmission, receipt, or distribution of child pornography, pursuant to

U.S.S.G. § 2G2.2(b)(6).  At the plea colloquy, Crawford admitted to using his computer to download and share child pornography.  Plea Tr. at 19-25.

Finally, the PSR recommended a five level enhancement for an offense involving over 8,000 images, pursuant to U.S.S.G. § 2G2.2(b)(7)(D).  At the plea colloquy, Crawford admitted to downloading at least 100 videos (which equate to 7,500 images)[7] plus another 500 images.  Plea Tr. at 23.

In light of these admissions and the guilty plea itself, it is difficult to see what utility a computer forensics examiner would have had for purposes of the sentencing hearing. Crawford admitted to each of the facts affecting his Guidelines calculation before the sentencing hearing had even been scheduled.  Accordingly, counsel reasonably could have determined that conducting a computer forensics investigation for the sentencing hearing would be fruitless, especially when other mitigation strategies, such as emphasizing Crawford's difficult childhood, were available.  See Strickland, 466 U.S. at 691.  ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

Moreover, the record reflects that, contrary to Crawford's allegations, counsel took the time to familiarize himself with the GigaTribe file-sharing program.  At sentencing, counsel explained to the Court how GigaTribe differed from LimeWire, another file-sharing program often involved in child pornography cases:

> [COUNSEL]:  I think most of the cases I've dealt with have been obviously in state court, but they're LimeWire cases where you point and click on a specific event and pull

---

[7]   Pursuant to U.S.S.G. § 2G2.2, Application Note 4(B)(ii), one video is equivalent to 75 images.

|  | that into your – you download that onto your computer. GigaTribe is much different than that, Your Honor. |
|---|---|
| [THE COURT]: | Yeah, this is the first time I've seen GigaTribe, honestly. |
| [COUNSEL]: | Well, it's the first time I'd dealt with it.  It's almost always LimeWire.  Of course you can highlight a hundred things on LimeWire and bring them all down. |
|  | GigaTribe is – it's a directory that individuals will put up, and under that directory is loads of material.  You can't preview prior to downloading it.  So what you're downloading is anything and everything that an individual puts under a directory, be it things like pornographic material, pictures, videos, a snuff story, music, whatever it could be. |

Sentencing Tr. at 33.   Counsel went on to argue that the government had not demonstrated that Crawford approved, viewed, or downloaded every file located on his computer.  Id. at 35. Thus, counsel highlighted a relevant technical distinction between GigaTribe and LimeWire by pointing out that GigaTribe allows semi-blind downloading of a batch of files, such that an individual could download a bundle of files without necessarily approving each constituent file.  Counsel tied that point into his sentencing presentation, arguing that based on how GigaTribe operates, Crawford was not necessarily culpable for downloading the most graphic files found on his computer.  The argument ultimately did not succeed, but not for counsel's lack of effort.  Instead, the Court rejected that argument because the facts showed Crawford would delete downloaded files that he found uninteresting or too repugnant, reflecting that the files retained were ones he had reviewed and chosen not to delete.  See Sentencing Tr. at 33-34.  The relevant point is that, contrary to Crawford's allegation, the record reflects that

counsel did familiarize himself with GigaTribe's manner of operation and used his research to try to mitigate Crawford's responsibility.

Lastly, Crawford has inadequately alleged how counsel's supposedly deficient investigation prejudiced him.  In general, Crawford fails to explain what helpful information a computer forensics investigation would have revealed, or how it would have caused the Court to impose a lesser sentence.  For example, Crawford does not explain how a computer forensics examination would have rebutted the government's allegation that Crawford maintained his large collection of child pornography in meticulously organized files.  Crawford adds some detail in his Reply, where he explains that additional investigation would have shown that he did not actually download 210,000 image files (as stated in the PSR).  Reply at 4.  However, the Court did not base Crawford's sentence on him possessing 210,000 images anyway.  The Guidelines calculation was based, in part, on the 8,000 images he admitted to possessing, as well as a variety of other offense characteristics to which he admitted during the plea colloquy.  The Court then adjusted the sentence on account of substantial mitigation concerning Crawford's abusive childhood.

Thus, Crawford's explanation of how he suffered prejudice is vague, speculative, or unsupported by the record.  Because vague, speculative, or unsupported allegations are insufficient to merit relief on an ineffective assistance of counsel claim, Tejada, 941 F.2d at 1559, Crawford is not entitled to relief on Claim 1.2.

**C.    Claim 1.3:  Whether counsel gave ineffective assistance by not seeking a substantial assistance agreement with the government immediately after Crawford retained him**

In Claim 1.3, Crawford alleges counsel was ineffective for not pursuing a substantial assistance agreement with the government until after Crawford had pled guilty.  Motion to Vacate at 17-18.  Crawford contends that such a delay resulted in a lost opportunity to assist the government, because had counsel pursued a substantial assistance agreement much earlier in the investigation, Crawford could have provided information that would have enabled federal agents "to pick up the… fresh trail" of an individual who distributed child pornography to Crawford.  Id. at 18.  Crawford recognizes that the government acknowledged his effort to provide assistance when it recommended a sentence at the low end of his Guidelines range, but he insists he would have received a "significantly lower sentence" had counsel arranged a substantial assistance agreement immediately after law enforcement began investigating him.

As a preliminary matter, the Court notes that Crawford learned of the investigation on January 25, 2011, when law enforcement officers executed a search warrant at his residence and he gave an interview with police.  See Motion to Vacate at 17.  Crawford hired counsel on February 1, 2011, but the grand jury did not indict Crawford until August 18, 2011.  See Motion to Vacate at 17; Indictment at 6.  Law enforcement arrested Crawford on August 19, 2011, and he appeared before the Court that same day.  See Motion to Vacate at 17.  Thus, between February 1, 2011, when Crawford retained counsel, and August 18, 2011, when the grand jury indicted Crawford, there were no judicial proceedings against Crawford.[8]

---

[8]    There were also no proceedings against Crawford in state court, according to the Duval County Clerk of Court.  See https://www.duvalclerk.com/ccWebsite/.

The Sixth Amendment right to the effective assistance of counsel does not attach until the prosecution has "commenced." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). The prosecution does not "commence," for Sixth Amendment purposes, until "the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Rothgery v. Gillespie County, Tex., 554 U.S. 191, 198 (2008).   Here, although there was an investigation against Crawford, no event marking the commencement of prosecution occurred until the grand jury returned an indictment on August 18, 2011.   That event memorialized the government's commitment to prosecuting Crawford, so it was at that point the Sixth Amendment right to counsel attached.   See id. at 198.   Before then, however, the right did not attach. Therefore, to the extent Crawford claims that counsel rendered ineffective assistance between February 1, 2011 and August 18, 2011 by not pursuing a substantial assistance agreement, it is not cognizable as a matter of law.

To the extent Crawford claims that counsel rendered ineffective assistance following his indictment, the claim is cognizable but it lacks merit.   Crawford's allegations, together with the record, fail to show that he suffered prejudice under Strickland.   As such, the Court does not, and need not, determine whether counsel performed deficiently in some way by not arranging a substantial assistance agreement immediately following the indictment.   Strickland, 466 U.S. at 697 (because both the deficiency and prejudice prongs are necessary to make a successful ineffective assistance claim, a court need not address both prongs if a petitioner fails on one).

Crawford's claim that, but for counsel's performance, the government would have filed a "substantial assistance" motion for a downward departure under U.S.S.G. § 5K1.1,

or that the government would have filed a "substantial assistance" motion for a reduced sentence under Fed. R. Crim. P. 35(b), is speculative.  As the government states in its response, "[t]his claim presumes that the defendant had information that law enforcement would consider substantial, that is, information that could lead to the discovery and prosecution of other, more culpable distributors of child pornography."  Motion to Dismiss at 6.  However, the record reflects that, although Crawford was willing to assist authorities, he lacked information that would materially assist them.  Crawford cooperated with law enforcement from the beginning of its investigation, agreeing to an interview, giving police his computer username and password, and later on, providing identifying information about the individual who supplied Crawford with most of the child pornography on his computer.  See Sentencing Tr. at 30-31.  In counsel's words, Crawford "could not have cooperated any more than he did."  Id. at 29.  However, none of the information Crawford provided had "yielded fruit" as of the sentencing hearing.  Id. at 30.  Thus, the record reflects that Crawford simply did not have helpful information.

Crawford suggests that if only counsel had arranged for him to give substantial assistance at an earlier point in time, then the information he provided would have been useful, because the government could have "pick[ed] up the perpetrator's fresh trail," referring to the individual who supplied Crawford with much of the child pornography on his computer.  Motion to Vacate at 18.[9]  However, the record belies the notion that counsel's timing in seeking out a substantial assistance agreement made any difference

---

[9]    This allegation presumes, without providing support, that the reason why Crawford's information proved unhelpful was that the trail had gone cold on the suspect who distributed child pornography to Crawford.  However, the brief discussion at the sentencing hearing concerning Crawford's cooperation efforts reflect not that the information had become stale, but that the information itself did not provide any leads.  See Sentencing Tr. at 29-31.

to the value of Crawford's information.   The record reflects that Crawford began cooperating with investigators immediately, <u>see</u> Sentencing Tr. at 29-31, yet the information he provided still did not lead to any further arrests or investigations.  Not only that, but if Crawford had additional information that would have helped the government track down other perpetrators, he does not explain why he could not have shared that information himself on January 25, 2011, the same day he gave a detailed interview with police and admitted to viewing child pornography.  <u>See</u> Plea Tr. at 19-25 (recounting details of Crawford's interview).   Accordingly, Crawford has not demonstrated a reasonable probability that, had counsel's timing in approaching the government with a substantial assistance offer been any different, Crawford could have supplied useful information warranting a "substantial assistance" motion of any kind.

Additionally, Crawford has not demonstrated a reasonable probability that, but for counsel's performance, the government actually would have filed a substantial assistance motion pursuant to U.S.S.G. § 5K1.1 or Rule 35(b).  The government has broad discretion in deciding whether or not to file a substantial assistance motion, so long as the decision does not rely on an unconstitutional motive such as the defendant's race or religion. <u>Wade v. United States</u>, 504 U.S. 181, 185-86 (1992) (broad discretion as to filing § 5K1.1 motions); <u>United States v. Perez-Morales</u>, 322 F. App'x 713, 715 (11th Cir. 2009) (citing <u>Wade</u>, 504 U.S. at 185-86) (broad discretion as to filing Rule 35(b) motions).  Not only has Crawford failed to show that he could have provided information amounting to substantial assistance, but Crawford also does not establish a reasonable probability that the government would have filed a substantial assistance motion.  Crawford's allegation that, but for counsel's performance, the government would have filed a substantial

assistance motion, and that the Court would have granted it, is only conjecture.  However, a petitioner is not entitled to relief under <u>Strickland</u> based on speculative and conclusory allegations.  <u>Tejada</u>, 941 F.2d at 1559.  Accordingly, Crawford's allegations, together with the record, do not show that he suffered prejudice under <u>Strickland</u>.  Therefore, relief on this claim is due to be denied.

**D.     Claim 1.4:   Whether counsel gave ineffective assistance by not having Crawford's faith-based therapist, Dr. Jason Hosch, testify at the sentencing hearing**

Crawford's final allegation of ineffective assistance is that counsel performed deficiently by not consulting with his faith-based psychological therapist, Dr. Jason Hosch, and by not calling him to testify at the sentencing hearing.  Motion to Vacate at 18-20. Crawford states that immediately after investigators questioned him, he voluntarily entered into counseling with Dr. Hosch.  Crawford states that counsel was aware he was undergoing therapy with Dr. Hosch, and that it was unreasonable for counsel not to call Dr. Hosch to testify at the sentencing hearing.  Crawford "believes that had Dr. Hosch testified, Dr. Hosch would have been able to assuage the Court's concerns about Mr. Crawford's public safety risk factors and, in doing so, result in a sentence lower than imposed." <u>Id.</u> at 20.

In support of this claim, Crawford submitted five letters from Dr. Hosch, purporting to show that Dr. Hosch would have been willing to testify, and how he would have testified. (<u>See</u> Doc. 10-1, Dr. Hosch Letters).  In general, the letters reflect that Dr. Hosch was willing to testify at the sentencing hearing, and that had he been called, Dr. Hosch would have testified that Crawford voluntarily sought therapy relating to anxiety, gender identity, and sexual addiction, that Crawford partially attended sexual addiction group therapy,

and that Dr. Hosch refused to release Crawford's treatment records to Crawford's probation officer without a court order (although it is not clear whether counsel was notified that Dr. Hosch would release treatment records only with a court order, as the letters concerning the release of records were only sent between Dr. Hosch, Crawford's probation officer, and Crawford himself).  The most recent letter from Dr. Hosch, which was handwritten and dated June 20, 2013, Dr. Hosch Letters at 2, more than a year after the Court sentenced Crawford, is the first and only letter indicating that Dr. Hosch would have testified that Crawford made "progress" in counseling, and that Crawford would not pose a public safety risk.

Crawford is not entitled to relief on this claim, because the record reflects that counsel did not perform in an objectively unreasonable manner by not calling Dr. Hosch to testify.   "Judicial scrutiny of counsel's performance must be highly deferential," Strickland, 466 U.S. at 689, and as such, Crawford must show that failing to call Dr. Hosch was outside the wide range of professionally competent assistance, see id. at 690.  The Court must evaluate counsel's performance in the context of the circumstances as they existed at the time, and not allow hindsight to distort its judgment.  Id. at 689.  Thus, the Court may not find that counsel performed deficiently simply because hindsight reveals that Dr. Hosch might have provided additional mitigation testimony regarding Crawford's public safety risk.  Indeed, a strong presumption exists that counsel's performance might be considered sound trial strategy, and strategic choices made after a thorough investigation are virtually unchallengeable.  Id. at 689-91.  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we

will seldom, if ever, second guess." Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1268 (11th Cir. 2012).

That Crawford can provide letters from Dr. Hosch indicating how he would have testified is of limited use in determining whether counsel performed deficiently:

> It is common practice for petitioners attacking their [ ] sentences to submit affidavits from witnesses who say they could have supplied additional mitigating circumstance evidence, had they been called, or, if they were called, had they been asked the right questions .... But the existence of such affidavits, artfully drafted though they may be, usually proves little of significance .... That other witnesses could have been called or other testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel. As we have noted before, in retrospect, one may always identify shortcomings, but perfection is not the standard of effective assistance.
>
> The widespread use of the tactic of attacking trial counsel by showing what "might have been" proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight. We reiterate: The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel.

Grossman v. McDonough, 466 F.3d 1325, 1347 (11th Cir. 2006) (quoting Waters v. Thomas, 46 F.3d 1506, 1513-14 (11th Cir. 1995)).

Here, the record, as reflected both in Dr. Hosch's letters and in the sentencing hearing transcript, shows that counsel sought Dr. Hosch's opinion about Crawford, and that counsel made a strategic choice not to call him.  At the sentencing hearing, counsel explained that he had considered calling Dr. Hosch to testify, but he chose not to do so after he received a letter from Dr. Hosch that "fell far short of what he and I had even discussed, which is part of the reason why we haven't called him here today."  Sentencing Tr. at 31-32.  Dr. Hosch's letters corroborate counsel's statement.  Dr. Hosch's letters

reflect that counsel sought an evaluation letter from him, Dr. Hosch Letters at 3, 6, and

that Dr. Hosch provided an opinion letter on March 4, 2012, id. at 7.  However, Dr. Hosch's

opinion letter merely related:  (1) that Crawford had voluntarily entered into counseling;

(2) the conditions for which Crawford sought treatment; (3) a brief overview of Crawford's

abusive childhood (accounts of which were presented at the sentencing hearing by

Crawford and his family members); (4) a brief, conclusory opinion that "Mr. Crawford's

early exposure to pornography and the influence of adult males upon him at that time are

significant factors with regard to the development and maintenance of the problem that

he is currently experiencing"; (5) Dr. Hosch's goals for counseling; and (6) a diagnosis of

Generalized Anxiety Disorder and Obsessive-Compulsive Disorder.  See id.  Nowhere in

the evaluation letter does Dr. Hosch indicate that Crawford had made progress in therapy,

that Crawford had a low risk of reoffending, or that Crawford posed a low risk to the public.

In short, the letter was not particularly revealing.  As such, counsel reasonably could have

determined, after receiving the opinion letter, that Dr. Hosch could not provide helpful

testimony.  The record reflects that counsel considered Dr. Hosch's opinion and explored

the option of having him testify, but that he deliberately chose not to do so.  Counsel's

decision not to call Dr. Hosch was a quintessentially strategic decision, it was not

unreasonable, and it is one this Court will not second guess.  Evans, 699 F.3d at 1268.

Dr. Hosch's June 20, 2013 letter, where Dr. Hosch relates for the first time that he

would have testified Crawford made progress in therapy, and that Crawford posed a low

public safety risk, does not change this conclusion.  The June 2013 letter, which Dr. Hosch

wrote more than a year after Crawford's sentencing hearing, is the first and only letter

reflecting that Dr. Hosch could have provided such testimony.  However, after-the-fact

revelations, such as those contained in Dr. Hosch's June 2013 letter, cannot affect the analysis of counsel's performance, because a court judges an attorney's performance based on the circumstances that existed at the time of counsel's representation. Strickland, 466 U.S. at 689. The relevant frame of reference is what counsel knew at the time he represented Crawford, not what Crawford or a would-be witness reveals for the first time long after the representation has concluded. That Crawford can point to a post hoc letter reflecting that Dr. Hosch would have testified favorably for him "proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction [litigants] will inevitably identify shortcomings in the performance of prior counsel." Grossman, 466 F.3d at 1347 (quoting Waters, 46 F.3d at 1514). Yet "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." Id.

Therefore, Crawford's allegations and the record demonstrate that counsel did not perform outside the wide range of professionally competent assistance by not calling Dr. Hosch. This conclusion is bolstered by the fact that, after imposing a sentence that varied below Crawford's Guidelines range, the Court remarked that it "appreciate[d] counsel's effort to provide the Court with a full picture of who Mr. Crawford is, and counsel effectively responded to some of the concerns raised by the Court, and that is what caused me to vary downward somewhat." Sentencing Tr. at 57. Counsel performed effectively at the sentencing hearing, and it resulted in Crawford receiving a sentence that was 26 months below the low end of his Guidelines range. See id. at 54, 56-57. Relief on Claim 1.4 is thus due to be denied.

Because the Court has determined that counsel did not perform deficiently, it need not address <u>Strickland</u>'s prejudice prong.  <u>Strickland</u>, 466 U.S. at 697.

**E.    Claim 2:    Whether the statute under which Crawford was convicted is unconstitutional for being "inherently multiplicitous" or duplicitous**

In Claim 2, Crawford alleges, in three sentences, that the statute under which he was convicted, 18 U.S.C. § 2252(a), is unconstitutional because it is "inherently multiplicitous" and duplicitous.  Motion to Vacate at 21.  Crawford argues that the statute is unconstitutional because "[t]he penalties for possession of child pornography[10] are less harsh than receipt or attempt,[11] even though each of these acts are inherently part of – or a subset of – the more stringent receipt charge."  <u>Id.</u>  Crawford points the Court to no authority supporting the position that 18 U.S.C. § 2252(a), or its penalty structure, are unconstitutional for being "inherently multiplicitous" or duplicitous.[12]    Nor does Crawford elaborate further on his conclusory allegation of multiplicity or duplicity, so the Court considers this claim inadequately pled.

Moreover, an allegation of multiplicity or duplicity is leveled against the indictment, not the statute.  <u>See</u> <u>United States v. Ford</u>, 784 F.3d 1386, 1392 (11th Cir. 2015) (quoting <u>United States v. Williams</u>, 527 F.3d 1235, 1241 (11th Cir. 2008)) ("An indictment is

---

[10]    <u>See</u> 18 U.S.C. §§ 2252(a)(4), 2252(b)(2) (possession)

[11]    <u>See</u> 18 U.S.C. §§ 2252(a)(2), 2252(b)(1) (receipt).

[12]    Indeed, Crawford's premise, that § 2252(a) is "inherently multiplicitous" because the more harshly-penalized act of "knowingly" receiving child pornography is supposedly part and parcel of possession, is incorrect.  A hypothetical illustrates the point:  an individual receives an unmarked package in the mail and is unaware of its contents.  The individual opens the package and discovers child pornography, but rather than destroying or disposing of the images, decides to keep them.  Such an individual has knowingly possessed child pornography, but he did not knowingly receive it.

The converse <u>is</u> true:  knowingly receiving child pornography necessarily entails knowingly possessing it; hence why possession is a lesser-included offense of receipt.  <u>See</u> 18 U.S.C. § 2252.  But as illustrated above, possession does not necessarily encompass <u>knowingly</u> <u>receiving</u> child pornography.

multiplicitous, and thus violates the Double Jeopardy Clause of the Fifth Amendment, 'if it charges a single offense in more than one count.'"); United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997) ("A count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses."); United States v. Langford, 946 F.2d 798, 802 (11th Cir. 1991) ("Multiplicity is the charging of a single offense in more than one count.").  However, a knowing and voluntary guilty plea waives any non-jurisdictional defect in the indictment. United States v. Brown, 752 F.3d 1344, 1347 (11th Cir. 2014).

An allegation that the indictment is multiplicitous is a non-jurisdictional defect that the defendant waives by pleading guilty.  Vasiloff v. United States, 622 F. App'x 881, 883 (11th Cir. 2015) (citing United States v. Smith, 532 F.3d 1125, 1129-30 (11th Cir. 2008)). Likewise, an allegation that the indictment is duplicitous is also a non-jurisdictional defect that the defendant waives by pleading guilty.  United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir. 1986).  "An indictment's relationship to jurisdiction is ... based on whether it alleges conduct which constitutes a federal offense, not on some intrinsic value of an indictment as such." United States v. McIntosh, 704 F.3d 894, 903 (11th Cir.2013) (alterations added).  As long as the indictment alleges a violation of a valid federal statute as enacted in the United States Code, it is enough to invoke the federal court's subject matter jurisdiction.  Brown, 752 F.3d at 1354 (citing Alikhani v. United States, 200 F.3d 732, 734-35 (11th Cir. 2000)).

Here, the Indictment alleged, among other things, a violation of 18 U.S.C. § 2252(a)(2) for receipt of child pornography.  See Indictment at 1.  This Court's research does not disclose that the Supreme Court or any court of appeals has found § 2252(a)(2) to be invalid.  Thus, the Indictment alleged a violation of a valid federal statute, and in

doing so, it invoked the federal court's subject matter jurisdiction, thereby rendering any other defect in the Indictment non-jurisdictional.  See Brown, 752 F.3d at 1354.  The record further demonstrates that Crawford knowingly and voluntarily pled guilty.  See Plea Tr. at 6-11, 17-27.  Therefore, Crawford waived any non-jurisdictional defects in the proceedings through his guilty plea, including any argument that the Indictment was multiplicitous or duplicitous.  See Vasiloff, 622 F. App'x at 882-83; Fairchild, 803 F.2d at 1124.  Relief on Claim 2 is therefore due to be denied.[13]

### F.   Claim 3:   Whether the sentencing guidelines for child pornography offenses conflict with the express purpose of the United States Sentencing Guidelines as established by Congress

In Claim 3, Crawford alleges that the sentencing guidelines for child pornography offenses are not based on any empirical data, and as such, the United States Sentencing Commission promulgated those guidelines in conflict with the express purpose of the United States Sentencing Guidelines, as established by Congress.  Motion to Vacate at 21.

---

[13]    Additionally, any alleged multiplicity or duplicity in the Indictment was harmless.  The vices of a multiplicitous indictment are that (1) "the defendant may receive multiple sentences for the same offense," and (2) "a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes – not one."  Langford, 946 F.2d at 802. Multiplicity's first vice is not implicated here, because Crawford pled guilty to, and was convicted and sentenced for, only one count of receiving child pornography. Judgment at 1. Thus, Crawford was not punished multiple times for a single offense. Cf. Langford, 946 F.2d at 804-05 (the chief danger of a multiplicitous indictment – receiving multiple sentences for the same offense – was not implicated where the court gave the defendant concurrent sentences on multiplicitous counts). Multiplicity's second vice is not implicated either, because Crawford decided to forego a jury trial and admitted that he knowingly received child pornography.

The vices of a duplicitous indictment (where multiple offenses are alleged in one count) are that it may lead to confusion, lack of fair notice, and the risk of jury compromises.  See Mayberry v. United States, 156 F. App'x 265, 267 (11th Cir. 2005) (citing with approval United States v. Moloney, 287 F.3d 236, 240 (2d Cir. 2002)).  These vices are not implicated either, because Crawford forewent a jury trial and admitted to one specific offense – knowingly receiving child pornography.

Crawford is not entitled to relief on this claim for two reasons.  For one, Crawford knowingly and voluntarily waived the right to collaterally attack his sentence.  See supra at 6-8.  Because this claim challenges Crawford's sentence, it falls within the scope of Crawford's collateral-review waiver.  See Plea Agreement at 9-10.[14]  Moreover, because Crawford's sentence (1) did not exceed the statutory maximum, (2) did not exceed the Guidelines range as determined by the Court, and (3) is not alleged to have violated the Eighth Amendment, none of the appeal-waiver's exceptions apply.  See id.  Therefore, this claim is barred.

Second, the claim that the Sentencing Commission improperly promulgated the applicable guidelines is not something that rises to the level of warranting habeas relief. Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.  Addonizio, 442 U.S. at 184-86.  Anything less is not appropriate for habeas review.  Indeed, the Eleventh Circuit has suggested that a challenge to the application of advisory sentencing guidelines does not warrant collateral relief.  Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014).  Here, Crawford attacks the Sentencing Guidelines themselves by questioning the Sentencing Commission's judgment in enacting them, and questioning whether adequate empirical evidence supports the Guidelines.  This does not involve a jurisdictional claim, a constitutional claim, or a claim of error that is so fundamentally defective as to cause a "complete

---

[14]     Because the claim is not one of ineffective assistance of counsel, the Court will not except the claim from the collateral-review waiver in light of the DOJ's October 2014 policy announcement.

miscarriage of justice."  See Addonizio, 442 U.S. at 184-86.  Accordingly, relief on Claim 3 is due to be denied.

> **G.    Crawford's Reply:  Whether counsel performed deficiently in advising Crawford about defenses prior to pleading guilty, and whether counsel inadequately advised Crawford about the collateral review waiver**

In his Reply, Crawford makes allegations suggesting that counsel rendered ineffective assistance by failing to advise him about defenses prior to pleading guilty, and by failing to advise him about the waiver of direct appeal and collateral review.  Reply at 2, 6-9. Crawford made no allegations in his § 2255 motion concerning the knowing and voluntary nature of his guilty plea or appeal waiver, and each of his original allegations of ineffective assistance related in some way to how counsel's performance affected sentencing.  See generally Motion to Vacate.  Thus, the reply brief is the first time that Crawford questions the validity of his guilty plea, appeal waiver, or counsel's performance in relation to either one.

Crawford did not seek leave to amend his motion to vacate after the government responded, and as such, the Court need not consider the new claims Crawford raises for the first time in his reply brief.  See Snyder v. United States, 263 F. App'x 778, 779-80 (11th Cir. 2008).  Even had Crawford moved for leave to amend, the new claims would be time-barred because (1) 28 U.S.C. § 2255(f)(1) requires claims to be filed within one year of when the conviction and sentence became final, (2) the Reply was filed on July 24, 2014, more than a year after July 10, 2012, when Crawford's conviction and sentence became final, and (3) the claims could not relate back to Crawford's timely filed Motion to Vacate under Fed. R. Civ. P. 15(c) because the new claims did not "[arise] out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original

pleading."  Moreover, even if the new claims were considered on the merits, the record refutes them because the record reflects that counsel and Crawford discussed possible defenses, <u>see</u> Sentencing Tr. at 44, and that Crawford knowingly and voluntarily pled guilty, waived any defenses, and knowingly and freely accepted the appeal waiver, Plea Tr. at 6-11, 17-27.  Accordingly, Crawford is not entitled to relief based on any of the new claims raised in the Reply brief.

## IV.      Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Crawford seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make this substantial showing, Crawford "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1.   Petitioner Zacchaeus Crawford's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Doc. 1, Motion to Vacate) is **DENIED**.

2.   The Clerk shall enter judgment in favor of the United States and against Zacchaeus Crawford, and close the file.

3.  If Crawford appeals the denial of the petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 6th day of July, 2016.

MARCIA MORALES HOWARD
United States District Judge

Lc19

Copies:
Counsel of Record
Pro se party